UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SUSAN D. CHEVALLIER<br>Plaintiff,<br>v.<br>OUR LADY OF THE LAKE<br>HOSPITAL, INC.,<br>Defendant | CIVIL ACTION NO. 3:18-cv-997<br><br>JUDGE<br><br>MAGISTRATE JUDGE |

---

## COMPLAINT

---

**NOW INTO COURT**, through his undersigned counsel, comes the Plaintiff, Susan

D. Chevallier, who respectfully represents as follows:

### JURISDICTION AND VENUE ALLEGATIONS:

**1.**

This court has subject-matter jurisdiction herein pursuant to 28 U.S.C. § 1331 and

28 U.S.C. § 1343 for Plaintiff's claims arising under federal law. This is an action seeking

injunctive relief, declaratory relief, attorneys fees and costs arising out of Defendant's

violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

("ADA"); Section 504 of the rehabilitation Act of 1973, 29 U.S.C. § 794 ("RA"); Section

1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116 ("Section 1557").

Plaintiff also seeks compensatory damages pursuant to the RA and Section 1557. Plaintiff asserts that she was a qualified, disabled individual within the meaning of the ADA, RA and Section 1557.   Plaintiff also asserts that she was not provided reasonable accommodations by the Defendant and thereafter sustained harms and losses.

**2.**

Venue is appropriate in the United States District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1391(b), because the events giving rise to this action occurred in this judicial district and Defendant Our Lady of the Lake Hospital, Inc. resides in this same judicial district.

**PARTIES:**

**3.**

Plaintiff, Susan D. Chevallier, *(hereinafter, "Ms. Chevallier")* a person of the full age of majority and a citizen and resident of East Baton Rouge Parish, Louisiana and is an individual residing in Baton Rouge, Louisiana. Ms. Chevallier communicates primarily in American Sign Language *(hereinafter "ASL")* and is substantially limited in the major life activities of hearing and speaking and is a qualified person with a disability within the meaning of the ADA, RA, and Section 1557.

**4.**

Defendant, Our Lady of the Lake Hospital, Inc.  *(hereinafter "OLOL")*, is a Louisiana domestic non-profit corporation with its principal business establishment located at 5000

Hennessey Blvd., Baton Rouge, Louisiana 70808.   Defendant is a place of public accommodation under federal antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of the ADA, RA, and Section 1557.

## FACTUAL ALLEGATIONS

### 5.

The Plaintiff, Ms. Chevallier, is a profoundly Deaf individual who communicates primarily through ASL which is her expressed, preferred, and most effective means of communications. She is Deaf from birth and she has limited proficiency of reading lips and will attempt to use her voice as a last resort. Although she has a limited ability to read and write English, her native language is ALS.

### 6.

On November 3, 2017, Ms. Chevallier had an appointment with her primary care physician, Dr. David Fontenot, at the Baton Rouge Clinic.  The Baton Rouge Clinic administration was aware that Ms. Chevallier was Deaf and arranged for a sign language interpreter to be present during her office visit at the Baton Rouge Clinic.

**7.**

During her office visit with Dr. David Fontenot, it became apparent to him that Ms. Chevallier was experiencing a psychotic break down of sorts and he believed she suicidal ideations. Realizing the severity of Ms. Chevallier's condition, Dr. David Fontenot called for an immediate PEC ("Physician's Emergency Certificate" whereby a mental health patient is involuntarily admitted to a hospital or psychiatric facility for a 72 hour observation) and she was transported to the OLOL Emergency Room via ambulance for further evaluation and treatment.

**8.**

The ASL interpreter hired by the Baton Rouge Clinic to provide interpreting services for the appointment with Dr. David Fontenot, accompanied Ms. Chevallier in the ambulance to OLOL and remained with her in the ER providing the necessary ASL interpreting services allowing the OLOL ER staff and physicians to communicate effectively with Ms. Chevallier during that short time.

**9.**

This ASL interpreter was hired and paid by the Baton Rouge Clinic to provide effective communication between Ms. Chevallier and their staff and physicians. The services of this ASL interpreter were not coordinated by nor paid by OLOL.

**10.**

At some point during the ER evaluation, the ASL interpreter hired by the Baton Rouge Clinic was required to leave because her assignment with the Baton Rouge Clinic had ended and she was scheduled for another appointment to provide interpreting services elsewhere to another Deaf client.

**11.**

After the ASL interpreter retained by the Baton Rouge Clinic finished her assignment and left the OLOL ER, Ms. Chevallier was left without an ASL interpreter and likewise no longer had an effective means of communication with the OLOL ER staff and physicians.

**12.**

As part of the history obtained from Ms. Chevallier prior to the ASL interpreter's departure, it was relayed to the OLOL ER staff and physicians that Ms. Chevallier suffered sexual abuse at the hands of various male offenders during her childhood and had developed a deep-rooted severe and disabling fear and mistrust of men which contributed to her present psychological condition.

**13.**

Due to this deep-rooted severe and disabling fear and mistrust of men, Ms. Chevallier was unable to communicate through a male ASL interpreter nor was she able to communicate through a VRI service *(Video Remote Interpretation)* (referred to

throughout the OLOL records as a "Portable Video Interpreter, Tele-Translator, and Interpreter on Wheels").  A male ASL interpreter nor a VRI would meet the special needs of this patient in this setting under these circumstances.

### 14.

Due to Ms. Chevallier's deep-rooted disabling fear and mistrust of men, she repeatedly requested that she only be provided a live female ASL interpreter to facilitate effective communication between her and the OLOL staff and physicians.

### 15.

Ms. Chevallier was hospitalized at OLOL from November 3, 2017 through November 13, 2017 with most of her hospitalization in the Lake Geriatric Behavioral Center.

### 16.

On November 8, 2017 during a family meeting/counseling session, in the absence of a sign language interpreter, Ms. Chevallier's adult daughter was forced to act as an interpreter to facilitate discussions of an extremely sensitive and emotional nature between the therapist/counselor and Ms. Chevallier.

### 17.

On November 10, 2017, OLOL finally provided a live female ASL interpreter to facilitate communication between Ms. Chevallier and the OLOL staff, nurses and physicians.

6

**18.**

It was during this one and only counseling session with a female ASL interpreter that Ms. Chevallier experienced the level of communication to have her issues satisfactorily  addressed during her entire hospitalization.

**19.**

Except for the one occasion on November 10, 2017 *(other than her initial ER assessment and when her adult daughter was forced to act as a sign language interpreter)* Ms. Chevallier's only method of communication with anyone at the facility was using a dry erase board and/or a sketch pad to jot down simple messages.

**20.**

The methods of communication used by OLOL to communicate with Ms. Chevallier —a dry erase board and expecting her to read lips—were not appropriate under the circumstances and did not provide Ms. Chevallier with communication equivalent to that provided to hearing persons. These methods of communication did not allow her to fully understand and discuss her phycological condition, her treatment and medication options, or to be able to fully understand and participate in group therapy sessions.

**21.**

Without a meaningful ability to communicate her thoughts, needs, and concerns or to fully participate in counselling sessions, Ms. Chevallier became lonely, angry, and anxious.

**22.**

Defendants' failure to provide Ms. Chevallier with effective auxiliary aids and services in the form of a live female ASL interpreter caused Ms. Chevallier to experience fear, anxiety, emotional distress, loneliness, isolation, segregation, frustration, invasion of her civil rights, denial of self-determination, mental anguish, embarrassment, inconvenience, indignity, and/or humiliation.

**23.**

OLOL, through its staff, employees, nurses, and/or doctors, knew or should have known of their obligations under the ADA and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are Deaf, and to develop policies to promote compliance with these statutes.

**24.**

OLOL, through its staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions created an unreasonable risk of causing Ms. Chevallier greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

**25.**

The harm sustained by Ms. Chevallier herein was an expected and foreseeable consequence of OLOL's failure to comply with the requirements and mandates of the ADA.

**26.**

OLOL, through its staff, employees, nurses, and/or doctors, staff failed to assess the communication abilities and needs of Ms. Chevallier.

**27.**

Despite OLOL's explicit knowledge of its obligation to accommodate persons with disabilities – including individuals that are deaf – OLOL did not take adequate steps to ensure that it provided effective communication to Ms. Chevallier.

**28.**

As a result of OLOL's failure to ensure effective communication with Ms. Chevallier, she received services that were objectively substandard and that were inferior to those provided to hearing individuals.

**29.**

OLOL's wrongful discrimination against Ms. Chevallier on the basis of disability is reflected by OLOL's failure to train its employee and promulgate effective policies of non-discrimination against deaf individuals.

**30.**

OLOL discriminated against Ms. Chevallier with deliberate indifference to her communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

**31.**

Ms. Chevallier will seek OLOL's healthcare services in the future, whether by choice or necessity, due to the proximity of the Hospital to her home and her ongoing need for future medical care.

**32.**

Due to the ongoing discrimination she encountered, Ms. Chevallier reasonably anticipates that she will encounter discrimination again in the near future when she next returns to this Hospital.

**FIRST CAUSE OF ACTION:**
**VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

**33.**

Ms. Chevallier reasserts the allegations of paragraphs 1-32 in support of her claims against OLOL for the violations of Section 504 of the rehabilitation Act of 1973, 29 U.S.C. § 794.

**34.**

At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to OLOL's conduct.

**35.**

At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to OLOL's conduct.

**36.**

At all times relevant to this action, Ms. Chevallier had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

**37.**

At all times relevant to this action, defendant offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

**38.**

OLOL discriminated against Ms. Chevallier, solely on the basis of disability, by denying her meaningful access to the services, programs, and benefits the defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

**39.**

OLOL also discriminated against Ms. Chevallier, solely on the basis of disability, by denying her reasonable accommodation requests, in violation of 29 U.S.C. § 794.

**40.**

Ms. Chevallier is therefore entitled to and seeks to recover compensatory damages for the harms and losses she sustained as a result of defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

**41.**

Ms. Chevallier is further entitled to and seeks an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

**SECOND CAUSE OF ACTION:**
**VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

**42.**

Ms. Chevallier reasserts the allegations of paragraphs 1-32 in support of her claims against OLOL for the violations of Title III of the ADA, 42 U.S.C. § 12181, et seq.

**43.**

At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to OLOL's conduct.

**44.**

At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the OLOL's conduct.

**45.**

At all times relevant to this action, Ms. Chevallier has been substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

**46.**

OLOL owns and operates a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

**47.**

Based on the above allegations as asserted herein, OLOL discriminated against Ms. Chevallier, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

**48**.

As set forth above, absent injunctive relief there is a clear risk that OLOL's actions will recur with Ms. Chevallier.

**49**.

As set forth above an award of nominal damages will act as a deterrent to OLOL from engaging in such violations in the future with other deaf individuals in similar circumstances and with similar needs as Ms. Chevallier.

**50.**

As set forth above, absent injunctive relief there is a clear risk that OLOL's actions will recur with Ms. Chevallier.

**51.**

Ms. Chevallier is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, nominal damages and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## THIRD CAUSE OF ACTION:
## VIOLATIONS OF SECTION 1557 OF THE
## PATIENT PROTECTION AND AFFORDABLE CARE ACT

**52.**

Ms. Chevallier reasserts the allegations of paragraphs 1-32 in support of her claims against OLOL for the violations of Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116.

**53.**

At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116 was in full force and effect and applied to OLOL's conduct.

**54.**

At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

**55.**

At all times relevant to this action, Ms. Chevallier had substantial limitations to the major life activity of hearing and speaking and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

**56.**

At all times relevant to this action, Ms. Chevallier's primary language for communication was American Sign Language and not English; and Ms. Chevallier had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

**57.**

At all times relevant to this action, OLOL received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of

providing health care. Therefore, OLOL is a health program or activity receiving federal

financial assistance pursuant to 42 U.S.C. § 18116(a).

**58.**

OLOL discriminated and continues to discriminate against Ms. Chevallier solely

on the basis of disability, by denying her meaningful access to the services, programs,

and benefits that OLOL offers to other individuals and by refusing to provide auxiliary

aids and services necessary to ensure effective communication in violation of Section

1157, 42 U.S.C. § 18116.

**59.**

OLOL discriminated against Ms. Chevallier by failing to ensure effective

communication through the providing of a qualified sign language interpreter on-site as

was required under the circumstances for this patient.

**60.**

OLOL discriminated against Ms. Chevallier by denying her reasonable

accommodation requests.

**61.**

On information and belief, the refusal to provide an on-site live female ASL

interpreter to Ms. Chevallier is as a result of a policy or practice of OLOL to prohibit or

impede the use of on-site qualified sign language interpreters without regard to whether

VRI services will provide effective communication under the circumstances of this case.

**62.**

Ms. Chevallier is therefore entitled to and seeks and recover compensatory damages for the injuries and loss she sustained as a result of OLOL's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

**63**.

Ms. Chevallier is further entitled to and seeks an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## **JURY DEMAND**

**64.**

The Plaintiff respectfully demands trial by jury on all issues triable by jury.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Ms. Chevallier respectfully prays that this Court grant the following relief against OLOL:

1. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that OLOL's policies, procedures, and practices subjected Ms. Chevallier to unlawful discrimination in violation of the RA, ADA, and Section 1557;

2.    Issue an injunction forbidding OLOL from implementing or enforcing any policy, procedure, or practice that denies Deaf individuals, or their companions, meaningful access to and full and equal enjoyment of their facilities, services or programs;

3.    Issue an injunction ordering defendant:

a.    To develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Mr. Francois or other Deaf individuals by failing to provide effective communication;

b.    To develop, implement, promulgate, and comply with a policy requiring that when a Deaf individual requests an in-person interpreter of a specific sex (Male of Female) as required for effective communication under the circumstances in cases involving sexual abuse victims, one will be provided as soon as practicable in all services offered by OLOL;

c.    To develop, implement, promulgate, and comply with a policy to ensure that OLOL will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with Deaf individuals;

d.    To develop, implement, promulgate, and comply with a policy to ensure that Deaf individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

e.    To create and maintain a list of male and female sign language interpreters and ensure availability of such interpreters at any time of day or night;

f.    To train all their employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf under the ADA, RA and ACA;

g.    To train all their employees, staffs, and other agents on a regular basis about defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by Deaf individuals;

4.    Award to Ms. Chevallier:

a.    Compensatory damages pursuant to the RA and ACA;

b.    Nominal damages pursuant to the ADA;

b.    Reasonable costs and attorneys' fees pursuant to the ADA, RA and ACA;

c.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

d.    Any and all other relief that this Court finds necessary and appropriate.

Respectfully Submitted:
**BIANCA LAW FIRM**

<u>/s/ Dominick M. Bianca</u>
**DOMINICK M. BIANCA (#26802)**
8212 Summa Ave.
Baton Rouge, Louisiana 70809
Telephone: (225) 925-2877
Facsimile: (225) 925-2875
Email: rusty@biancalawfirm.com
*Counsel for Plaintiff, Susan D. Chevallier*